UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANTHONY TARTARO et al.,

                Plaintiffs,              5:13-cv-360
                                                                (GLS/TWD)

           v.

**CITY OF SYRACUSE,**

                Defendant.
_____

**APPEARANCES:**                          **OF COUNSEL:**

**FOR THE PLAINTIFFS:**
Cote, Limpert Law Firm             JOSEPH S. COTE, III, ESQ.
214 North State Street              M. JOANNE VAN DYKE, ESQ.
Syracuse, NY 13203

**FOR THE DEFENDANT:**
City of Syracuse Corporation Counsel  ANN M. ALEXANDER, ESQ.
233 East Washington Street       JAMES P. MCGINTY, ESQ.
300 City Hall
Syracuse, NY 13202

**Gary L. Sharpe
Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

    Plaintiffs Anthony Tartaro ("Tartaro"), Christina Tartaro, 921-925 State Street Associates Inc., and Andy's Cycle Shop Inc. commenced this action against defendants the City of Syracuse and Joan MacDonald,

Commissioner of Department of Transportation of the State of New York, pursuant to 42 U.S.C. § 1983, alleging violations of their due process rights under the Fifth and Fourteenth Amendments, as well as analogous claims pursuant to the New York State Constitution, in connection with the condemnation and demolition of their real and personal property. (*See generally* Compl., Dkt. No. 1 at 5-12.) Pending is the City's motion for summary judgment.[1] (Dkt. No. 44.) For the following reasons, the motion is granted.

## II. **Background**[2]

The property at issue, located at 921-925 North State Street in Syracuse, New York, was purchased in 2002 by 921-925 State Street

---

[1] In a prior Memorandum-Decision and Order issued on October 18, 2013, this court granted MacDonald's motion to dismiss and dismissed all claims against her. (Dkt. No. 25.)

[2] Unless otherwise noted, the facts are not in dispute. Additionally, the court notes that plaintiffs, in responding to the City's statement of material facts, have overwhelmingly failed to comply with this District's Local Rules in their denials of facts asserted by the City. As set forth in the Local Rules, "[e]ach denial shall set forth a specific citation to the record where the factual issue arises," and "[t]he [c]ourt shall deem admitted any properly supported facts set forth in the [moving party's] Statement of Material Facts that the opposing party does not specifically controvert." N.D.N.Y. L.R. 7.1(a)(3). Here, on numerous occasions, plaintiffs simply "deny" a fact without any citation to where in the record that fact is disputed. (*See, e.g.*, Dkt. No. 49, Attach. 2 ¶¶ 6, 9, 19-22, 27, 29, 34, 40, 45, 52-56, 59, 63, 73, 77-79.) Furthermore, in those instances where plaintiffs have attempted to provide a citation to the record, they generally refer to an entire affidavit without pointing to specifically where in the exhibit the dispute arises. Accordingly, those facts that have been asserted by the City which are supported by a proper citation to the record, and are not properly and specifically refuted by plaintiffs, are deemed admitted.

Associates, Inc., (Def.'s Statement of Material Facts (SMF) ¶ 1, Dkt. No. 44, Attach. 1), of which Tartaro is the sole shareholder, (Compl. ¶ 1). The property included "a four-story section connected to a two-story building at the northwest corner of the property." (Def.'s SMF ¶ 5; Dkt. No. 44, Attach. 15 at 13.) The property had a long history of code violations, substantial deterioration, and other related deficiencies, including loose and falling bricks, a damaged roof, missing shingles and windows, and a deteriorating facade. (Def.'s SMF ¶¶ 2, 6, 10, 12.) As a result, city code inspectors questioned the overall stability of the building. (*Id.* ¶¶ 15-16.)

On March 2, 2009, Michael Bova, a code inspector for the City, inspected the property and noted several code violations consistent with the above. (*Id.* ¶ 12.) Following that inspection, a notice was sent to "921-25 N State St Assoc I c/o T. Tartaro," notifying the owner of the premises that the building was in violation of the law, that the "deteriorated condition of [the] building/structure requires repairs/demolition," and that the owner had the right to an administrative hearing regarding these outstanding issues. (*Id.* ¶ 13; Dkt. No. 44, Attach. 14 at 35-36.) The list of violations also indicated that the building was in "very bad condition" and required an engineer's report regarding its overall stability. (Dkt. No. 44, Attach. 14 at

36.)

Two days after Bova's inspection, on March 4, an additional inspection was conducted by Theodore Koagel, another city code inspector, who determined that an exterior wall of the structure that abutted Interstate Route 81-N was "structurally unsound." (Def.'s SMF ¶ 18; Dkt. No. 44, Attach. 16 at 2.) At that point, a "Notice and Order Demolition" was sent to 921-925 North State Street Associates, care of Tartaro, notifying him that the building was determined to be "UNFIT FOR OCCUPANCY" pursuant to the Property Conservation Code of the City of Syracuse, as it posed "an immediate danger to the health, safety, and welfare of the general public." (Dkt. No. 44, Attach. 16 at 6.) The owner was given fifteen days to arrange for demolition of the building, or else the City would "tak[e] whatever action is necessary to compel compliance," and "may also elect . . . to recover the costs thereof," as allowed by the Property Conservation Code. (*Id.*) The notice also scheduled an administrative hearing for fifteen days later, March 19, at which time Tartaro was notified he would "be able to dispute th[e] order." (*Id.* at 7.)

That hearing occurred as scheduled on March 19, and was attended by Tartaro, who requested additional time in order to obtain funding to

repair the building. (*Id.* at 3, 9.) The City granted Tartaro an extension until May 1 to bring the structure into compliance. (*Id.* at 9; Def.'s SMF ¶ 24.) When a subsequent inspection was performed in anticipation of the May 1 deadline, and no progress had been made on repairing the structure, (Def.'s SMF ¶ 25), the City filed a petition in Syracuse City Court on May 11, asserting that plaintiffs' property was in violation of several provisions of the city code and the New York State Multiple Residence Law, and seeking monetary judgments for each violation, (*id.* ¶ 27; Dkt. No. 44, Attach. 5 at 3-7). The owners appeared in that action, (Def.'s SMF ¶¶ 29-30), which was ultimately adjourned several times, (*id.* ¶¶ 33, 36, 39, 47, 49, 51, 54, 56, 59). While that action remained pending, the City performed several subsequent inspections, resulting in additional code violations attributed to the structure. (*Id.* ¶¶ 34, 40-41, 53.) Additionally, the chief of the City's fire department sent a letter to Bova, indicating that the fire department had received numerous complaints about the structure from "[m]otorist[s] along [R]oute 81" who felt "threatened by the possibility that the building may fall on them as they pass." (*Id.* ¶ 57; Dkt. No. 44, Attach. 14 at 57.) Consequently, the fire chief believed that the structure "represent[ed] a serious hazard to the public and that the [C]ity should

proceed with demolition as soon as possible." (Def.'s SMF ¶ 57; Dkt. No. 44, Attach. 14 at 57.)

Although plaintiffs had suggested that they would provide an engineer's report regarding the condition and stability of the structure, no report was ever provided. (Def.'s SMF ¶¶ 35, 37, 43, 52-53.) Ultimately, the City hired an engineer to conduct a structural assessment of the premises on January 22, 2010.[3] (*Id.* ¶ 58.) Based on that assessment, the engineer compiled a report in which he concluded that both buildings on the premises were structurally deficient, that "the structural system . . . has been severely compromised and is considered unsafe for occupancy under these conditions," and that "the damaged west wall of the four-story building is considered a safety concern due to its proximity to Route 81." (*Id.* ¶¶ 60-64; Dkt. No. 44, Attach. 15 at 10-11, 13-18.)

Shortly after the issuance of the engineer's report, on February 3, 2010, a Notice of Emergency Demolition was posted at the premises and mailed to 921-925 North State Street Associates. (Def.'s SMF ¶ 65; Dkt. No. 44, Attach. 14 at 59-61.) This notice informed the owner that the

---

[3] The report indicates that Tartaro and his attorney, Joseph Cote, were both present during the engineer's assessment of the structure. (Dkt. No. 44, Attach. 15 at 13.)

structure had been inspected, "designated as UNFIT FOR OCCUPANCY," and determined to "constitute an immediate danger to the health, safety and welfare of the general public." (Dkt. No. 44, Attach. 14 at 60.) The notice ordered immediate demolition of the building, and notified the owner that if it "fail[ed] to take action to have the . . . structures immediately demolished, THE CITY OF SYRACUSE WILL DEMOLISH THE . . . STRUCTURE(S), as immediate action is necessary to abate the hazard and imminent danger." (*Id.*) Over a week after the issuance of this notice, on February 11, 2010, Bova performed another inspection of the property, at which time he had "personal contact" with Tartaro, (*id.* at 8), and noted that "no progress" had been made, (*id.* at 9, 47). Approximately two weeks later, on February 26, 2010, "a portion of the four-story structure's west brick masonry wall collapsed," which "threat[ened] the safety of travelers on I-81 North." (*Id.* at 9; Def.'s SMF ¶¶ 76-77.) The City then entered into an agreement with the New York State Department of Transportation (NYSDOT), whereby NYSDOT arranged for the demolition of the structure. (Def.'s SMF ¶¶ 77, 80.)

    On March 12, 2010, NYSDOT sent a letter to 921-925 North State Street Associates, informing it that the State of New York had issued a

Notice of Appropriation for the premises, which granted the State an easement to the property in order to perform the demolition. (*Id.* ¶ 82; Dkt. No. 44, Attach. 10 at 2.) The demolition subsequently occurred, and was completed by April 20, 2010. (Def.'s SMF ¶ 88.) On March 11, 2013, plaintiffs commenced this action in New York State Supreme Court, Onondaga County. (*See generally* Compl.) The City removed the action to this court, (Dkt. No. 1), and, after the close of discovery, (Dkt. No. 39), filed its now-pending motion for summary judgment, (Dkt. No. 44).

## III. Standard of Review

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

## IV. Discussion

Although inartfully pleaded, plaintiffs' complaint enumerates four overlapping causes of action, which generically allege claims pursuant to 42 U.S.C. § 1983 for violations of their due process rights under the Fifth

and Fourteenth Amendments.[4]  (*See generally* Compl.)  Plaintiffs contend that their property was condemned and demolished without adequate process given to them and that the City of Syracuse is therefore liable. (*Id.*)  In its motion for summary judgment, the City argues that all claims against it should be dismissed as untimely and, alternatively, on the merits. (Dkt. No. 44, Attach. 18 at 2-24.)  In response, plaintiffs argue that their action was timely filed, and that the City is not entitled to judgment as a matter of law on the merits of plaintiffs' claims because due process violations occurred.  (Dkt. No. 49 at 2-7.)  For the following reasons, the court agrees with the City.[5]

**A.     Procedural Due Process**

With respect to plaintiffs' procedural due process claims, the City argues that it is entitled to summary judgment because the existence of an emergency condition justified the swift demolition of plaintiffs' structure, and that plaintiffs were, in any event, afforded adequate notice and an opportunity to be heard prior to the deprivation of their property.  (Dkt. No.

---

[4] Plaintiffs have also asserted an analogous claim against the City pursuant to the New York State Constitution.  (Compl. ¶¶ 8-12.)

[5] Because the court finds that plaintiffs' claims fail on their merits, as further discussed below, it finds it unnecessary to address the parties' arguments regarding the potential untimeliness of plaintiffs' action.

9

44, Attach. 18 at 7-15.) The court agrees.

Analysis of a procedural due process claim is composed of two prongs. *See Narumanchi v. Bd. of Trs. of Conn. State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988). First, the court must discern "whether the plaintiff has a property or liberty interest protected by the Constitution." *Id.* If such an interest exists, "[the] court must then consider whether the government deprived the plaintiff of that interest without due process." *Id.* Thus, under this second step of the analysis, the court must ask "what process was due to the plaintiff, and . . . whether that constitutional minimum was provided in the case under review." *Id.* (citation omitted). This involves a weighing of the private interest to be affected, the risk of erroneous deprivation, the value of additional safeguards, and the governmental burden such additional safeguards would impose. *See Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976); *Interboro Inst., Inc. v. Foley*, 985 F.2d 90, 93 (2d Cir. 1993) ("Due process requires notice and the opportunity to be heard." (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950))). Under certain circumstances, however, the "lack of such predeprivation process will not offend the constitutional guarantee of due process." *Catanzaro v. Weiden*, 188 F.3d 56, 61 (2d Cir. 1999).

Specifically, "'the necessity of quick action by the [municipality] . . . when coupled with the availability of some meaningful means by which to assess the propriety of the [municipality]'s action at some time after the initial taking, can satisfy the requirements of procedural due process.'" *Id.* (quoting *Parratt v. Taylor*, 451 U.S. 527, 539 (1981)). Thus, "where there is competent evidence allowing [a municipal] official to reasonably believe that an emergency does in fact exist, . . . the discretionary invocation of an emergency procedure results in a constitutional violation only where such invocation is arbitrary or amounts to an abuse of discretion." *Id.* at 63.

As noted above, the City partially relies on an argument that it was entitled to demolish the structure at issue because of the dangerous condition in which the buildings had remained, which posed an emergency threat to the public. (Dkt. No. 44, Attach. 18 at 7-15.) As noted by the City, as an exception to the general rule that notice and a pre-deprivation hearing are required before infringing on one's property interests, "the failure or inability to provide a pre-deprivation hearing is justified in cases of an emergency." (*Id.* at 8 (citing *Daniels v. Williams*, 474 U.S. 327, 328 (1986).) While the court would be inclined to agree with the City on this point, given the undisputed evidence presented with the City's motion, it is

11

unnecessary to reach an analysis of this issue. Here, plaintiffs were provided with pre-deprivation notice, on numerous occasions, that their property would need to be demolished due to several unaddressed problems, and that they would be charged for the costs of that demolition pursuant to the Property Conservation Code of the City of Syracuse; plaintiffs were also afforded a hearing at which they could dispute the City's findings of code violations and whether demolition was necessary. (Dkt. No. 44, Attach. 6 at 2; Dkt. No. 44, Attach. 10 at 2; Dkt. No. 44, Attach. 14 at 35, 59-61, 63-65; Dkt. No. 44, Attach. 16 at 2-3, 6-7, 9); *see, e.g., Goe v. City of Mexico*, 217 F. App'x 583, 584 (8th Cir. 2007) ("[E]vidence in the record established that the City satisfied [the plaintiff]'s right to due process by sending six written deficiency notices which informed him of the building code violations and by providing him an opportunity to appeal those notices.").

Plaintiffs, in their response to the City's motion, do not dispute that they were in fact given notice and an opportunity to be heard, nor could they, based on the record before the court. Instead, plaintiffs argue, in conclusory fashion and without citing any facts in support, that demolition was unnecessary because the condition of the building was not as poor as

12

represented by the City. (Dkt. No. 49 at 2-3.) The undisputed facts demonstrate that plaintiffs were given notice, and a hearing was held, which was attended by Tartaro, as owner of the property. (Def.'s SMF ¶¶ 23-24; Dkt. No. 44, Attach. 16 at 9.) Accordingly, because the court finds that plaintiffs were not in fact deprived of notice and an opportunity to be heard prior to the deprivation of their property, their procedural due process claim fails.

**B.    Substantive Due Process**

With respect to the substantive due process claim, the City argues that plaintiffs have elicited no facts from which a reasonable trier of fact could conclude that the City's determination as to the necessity of demolition was arbitrary or conscience-shocking. (Dkt. No. 44, Attach. 18 at 17-18.) Again, the court agrees with the City.

"[T]he Due Process Clause of the Fourteenth Amendment embodies a substantive component that protects against 'certain government actions regardless of the . . . procedures used to implement them.'" *Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 460 (2d Cir. 1996) (quoting *Daniels*, 474 U.S. at 331). "To state a substantive due process claim, a plaintiff must plead that (1) a constitutionally cognizable property interest is at stake, and

13

(2) the defendant's alleged actions depriving h[im] of that right were not merely incorrect or ill-advised, but arbitrary, conscience-shocking, or oppressive in the constitutional sense." *Finn v. Anderson*, 592 F. App'x 16, 20 (2d Cir. 2014) (internal quotation marks and citation omitted); *see 49 WB, LLC v. Vill. of Haverstraw*, 511 F. App'x 33, 34 (2d Cir. 2013) (explaining that, to show a substantive due process violation, a "[p]laintiff must show that (1) it had a valid property interest (which is not challenged here), and that (2) the defendants infringed on the property right in an arbitrary or irrational manner" (internal quotation marks and citation omitted)); *Natale v. Town of Ridgefield*, 170 F.3d 258, 262 (2d Cir. 1999) ("For state action to be taken in violation of the requirements of substantive due process, the [action] must have occurred under circumstances warranting the labels 'arbitrary' and 'outrageous.'").

Here, quite simply, plaintiffs have failed to offer any evidence that would support a finding that the City acted in an arbitrary fashion in arriving at its decision that demolition was merited. On the contrary, the only evidence of record supports the City's contention that the decision was based on inspections and assessments of the structure which were completed by several members of the City's code enforcement department,

its fire chief, and a structural engineer, who all opined that the building was in need of significant repair and was unstable or unsafe in its current condition. (Dkt. No. 44, Attach. 14 at 9, 15-16, 23-24, 36, 57; Dkt. No. 44, Attach. 15 at 10-18.) As noted by the City, the decision was "not even 'incorrect or ill-advised,'" (Dkt. No. 44, Attach. 18 at 18), as pieces of the building did in fact fall off of the facade, resulting in the partial closure of a bordering interstate highway, (Dkt. No. 44, Attach. 12 at 2; Dkt. No. 44, Attach. 14 at 9). Plaintiffs have offered no evidence that would create a genuine dispute of fact on this issue; instead, they merely deny that the building was in such condition, and assert, without citing to any factual support, that the City's true reason for the demolition was not because of any dangers presented by the structure. (Dkt. No. 49 at 3.) Such conclusory assertions or denials are insufficient to create a dispute of fact that would prevent the entry of summary judgment. *See Hooker v. Fournier*, 29 F. App'x 641, 643 (2d Cir. 2002) ("[I]n the summary judgment context, mere conclusory allegations . . . in legal memoranda . . . are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist." (internal quotation marks and citation omitted)). Accordingly, summary judgment in favor of the City is

appropriate. *See Catanzaro*, 188 F.3d at 64 (affirming the dismissal of a substantive due process claim where "[t]here [was] nothing to suggest that [d]efendants did anything more than order the demolition of the [b]uildings, which had been severely damaged by an automobile accident, in order to protect the public safety," and noting that, "[a]bsent some evidence of a culpable state of mind on the part of [the d]efendants, . . . which [the p]laintiffs d[id] not provide, no reasonable trier of fact could find this demolition to be arbitrary, conscience-shocking or otherwise constitutionally oppressive"); *First Nat. Acceptance Co. v. City of Utica, N.Y.*, 26 F. Supp. 3d 185, 199 (N.D.N.Y. 2014) (granting summary judgment to the defendant on a substantive due process claim based on demolition of the plaintiff's building where "[n]o evidence indicate[d] . . . that the [defendant] was motivated by anything other than an attempt to enforce the law," and noting that, "[w]ithout more, the [c]ourt must find that [the p]laintiff cannot maintain a substantive due process claim").

**C.     Remaining State Law Claims**

To the extent plaintiffs have asserted analogous claims pursuant to the New York State Constitution and a common law claim for conversion of personal property, those remaining claims involve only state law, and, thus,

16

in light of the dismissal of all federal claims from this action, the court declines to exercise its supplemental jurisdiction over them. "In the absence of original federal jurisdiction, the decision of whether to exercise jurisdiction over pendent state law claims is within the court's discretion." *Butler v. LaBarge*, No. 9:09-cv-1106, 2010 WL 3907258, at *3 (N.D.N.Y. Sept. 30, 2010) (citing *Kolari v. N.Y. Presbyterian Hosp.*, 455 F.3d 118, 121-22 (2d Cir. 2006)). When all federal claims have been dismissed before trial, the balance of factors in deciding whether to exercise jurisdiction over remaining state law claims leans toward dismissal. *See Kolari*, 455 F.3d at 122. Accordingly, the court declines jurisdiction over any state law claims and they are dismissed from this action.

### V. Conclusion

**ACCORDINGLY**, it is hereby

**ORDERED** that the City of Syracuse's motion for summary judgment (Dkt. No. 44) is **GRANTED**; and it is further

**ORDERED** that plaintiffs' complaint (Dkt. No. 1 at 5-12) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-

17

Decision and Order to the parties.

**IT IS SO ORDERED**

July 6, 2015
Albany, New York

_____
Gary L. Sharpe
Chief Judge
U.S. District Court